## KENTUCKY BAR ASSOCIATION, Movant,

v.

## Joel R. EMBRY, KBA Member No. 20905, Respondent.

### No. 2004–SC–0763–KB.

Supreme Court of Kentucky.

Jan. 20, 2005.

---

Bruce K. Davis, Executive Director, Linda Gosnell, Deputy Bar Counsel, Frankfort, Counsel for Movant.

Joel R. Embry, Hopkinsville, Counsel for Respondent.

## OPINION AND ORDER

On November 22, 2000, Respondent, Joel Embry, was suspended from the practice of law for failing to pay dues. On April 20, 2001, the Inquiry Commission charged Respondent with one count of violating SCR 3.130–8.3(b) because he pleaded guilty to second-degree manslaughter and first-degree possession of a controlled substance. On January 24, 2003, Respondent was formally sentenced to ten years imprisonment for manslaughter and five years for possession of a controlled substance, to be served concurrently.

The Trial Commissioner recommended that Respondent be suspended from the practice of law for five years subject to conditions including drug tests, that he be allowed to reapply to the KBA for bar membership after five years, and that he be subject to permanent disbarment for any further violations. The Board of Governors of the Kentucky Bar Association ("Board") voted 19–0 that Respondent was guilty of the charge. The Board voted 13–5 to affirm the Recommendation of the Trial Commissioner, with all conditions, except that the five-year period of suspension is to run from the date of this Order. The Board also concluded that Respondent must participate in the Kentucky Lawyer's Assistance Program (KYLAP), with the appropriate monitoring to be established by agreement with KYLAP and the Office of Bar Counsel of the KBA. We adopt the recommendation of the Board of Governors that Respondent receive a five year suspension from the practice of law.

It is undisputed that Respondent endured some difficult situations throughout his life. During argument before the Board of Governors, Counsel for Respondent stated that Respondent lived in Hopkinsville most of his life. His mother stayed home and was afflicted with alcoholism, schizophrenia, and later in her life, was diagnosed with Alzheimer's disease. His father also drank excessive amounts of alcohol.

Professionally, Respondent had served as a public defender for the Department of Public Advocacy. Respondent took difficult cases including death penalties. In 1982, Respondent was married to a mother of two children. His marriage lasted for about eight years. During those eight years, the daughter died of a brain injury and the son went to prison for shooting a man.

In November 1991, Respondent's father died and he moved in to take care of his mother. While he was working he was able to hire a caretaker to tend to his mother. However, six months after the death of his father, Respondent began using crack cocaine and became a regular user. As time progressed, Respondent's use of cocaine increased and his coworkers warned that he should seek treatment for his problem. Respondent responded that he did not want to seek treatment because it would require him to be away from his mother for thirty days. He did not want her committed to a care facility because his father had also refused to do so. He also considered that any drug abuse treatment was unlikely to be successful. Respondent's drug addiction and financial situation continued to spiral downward until the resources for paying his mother's caretakers became depleted. In November of 1998, after flunking a drug test, which he agreed to take or face termination, he voluntarily resigned from DPA and attempted to continue in private practice.

On February 7, 1999, Respondent could not awaken his mother, and called for an ambulance. She was transported to the hospital, examined, and diagnosed with pneumonia. Medical personnel determined that due to her emaciated condition that they should contact the police. The police report taken in the emergency room indicated that Respondent's mother had a body temperature of 85 degrees; that she had multiple sores, abrasions, and contusions; and that she had feces and urine on her body, feet, and legs. During a search of Respondent's house, the police discovered some deplorable conditions such as a soiled bed and floors. During the search police also discovered drug paraphernalia. His mother died several days later and Respondent was indicted for manslaughter and drug possession. Respondent pleaded guilty to the charges.

On January 24, 2003, Respondent was formally sentenced to ten years imprisonment for manslaughter and five years for possession of a controlled substance, to be served concurrently. On May 1, of 2002, Respondent received shock probation after serving 150 days in jail. Since Respondent's suspension from the practice of law, he has worked as a lathe operator at a factory and has been free of drugs.

The Board notes that this is a tragic case of a person who was a committed, competent, and conscientious career public defender who had no previous disciplinary charges. As his duties in caring for his mother increased, his drug use escalated. The Board notes that Respondent was remorseful and wished he could practice law again to help people as he did before. Respondent also stated that he would comply with any decision of character and

fitness committee, including KYLAP assistance.

 Respondent's admission that he violated SCR 3.130–8.3(b) of the Rules of Professional Conduct by his guilty pleas to both felonies is sufficient to support such a violation. SCR 3.130–8.3(b) states, "It is professional misconduct for a lawyer to: (b) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." In *Kentucky Bar Association v. Jones,*[1] this Court made clear that a plea of guilty to a felony can be such conduct that is calculated to bring a member of the bar into disrepute, and ordered a two-year suspension for two convictions of reckless homicide as a result of that attorney's drunken driving. Here we have two such pleas that warrant a suspension for five years.

Upon the foregoing facts and charges, it is ordered that the recommendation of the Board of Governors be adopted. Therefore, it is ORDERED that:

1. Respondent is hereby suspended from the practice of law for violating SCR 3.130–8.3 for a period of five years to begin upon the date of this Order.

2. That Respondent comply with the terms of probation imposed by the Court pursuant to his criminal convictions, and that any violation of such terms resulting in the revocation of probation would result in permanent disbarment.

3. That at the end of this suspension Respondent shall be required to reapply for admission to the Kentucky Bar, and that such application be reviewed under the provisions of SCR 3.505, SCR 2.040, and SCR 3.510.

4. In accordance with SCR 3.166(4) and 3.390, Respondent shall, within ten days from the entry of this Opinion and Order, notify in writing all courts in which he may have matters pending and all clients, of his inability to provide further legal services, and furnish the Director of the Kentucky Bar Association with a copy of all such letters. Respondent shall also make arrangements to return all active files to the clients or to new counsel, and shall return all unearned attorney fees and client property to the client and shall advise the KBA Director of such arrangements within the same ten day period.

5. In accordance with SCR 3.450, Respondent is directed to pay all costs associated with these disciplinary proceedings in the amount of $814.59 for which execution may issue from this Court upon finality of this Order.

All concur.

ENTERED: January 20, 2005.

/s/ Joseph E. Lambert
CHIEF JUSTICE